## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

JERRY D. ANTHONY          *
                               *
         Plaintiff          *
                               *
VS.                       *
                               *          NO: 5:04CV00295  SWW
LAYNE CHRISTENSEN COMPANY;    *
LAYNE CHRISTENSEN COMPANY     *
SHORT-TERM DISABILITY PLAN;    *
LAYNE CHRISTENSEN COMPANY     *
LONG-TERM DISABILITY PLAN; and   *
UNUM LIFE INSURANCE
COMPANY OF AMERICA

         Defendants

## ORDER

Plaintiff Jerry D. Anthony ("Anthony") brings this action under the Employee Retirement Income Security Act  ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), against Layne Christensen Company ("Layne") and Unum Life Insurance Company of America ("UNUM").  Before the Court are the parties' motions for summary judgment (docket entries #29, #39, #41). After carefully considering the motions, as well as each response and reply, the Court concludes that Anthony's motion for summary judgment should be granted in part and denied in part, and Defendants' motions should be denied.  For the reasons that follow,  Anthony's claim for short term disability ("STD") benefits will be granted, and Anthony's claim for long term disability ("LTD") benefits will be dismissed without prejudice for failure to exhaust administrative remedies.

1

**Background**

Anthony worked for Layne as a welder, and he qualified as a beneficiary of the Layne

Christensen Short-Term Disability Plan ("STD Plan") and the Layne Christensen Long-Term

Disability Plan ("LTD Plan").   Both plans are employee welfare benefit plans governed by

ERISA.

Layne funds the STD Plan and serves as the Plan Administrator, but has delegated

authority to UNUM to administer claims.[1]   UNUM insures the LTD Plan through a group policy

and administers claims and benefits under the LTD Plan.   Docket entry #31, Ex. 2.   Under the

terms of the STD Plan,[2] benefits are payable for a maximum period of 26 weeks.   Under the

LTD Plan, disability income benefits are payable after a 180-day elimination period, and benefits

are payable for a maximum period determined by the applicant's age at the time of his or her

disability.  *Id*.

---

[1]The claims administration agreement between Layne and UNUM states: "[Layne] shall have the final authority to determine whether or not to pay claims that UNUM recommends for payment or denial and shall be solely responsible for making payment of claims."   Docket entry #31, Ex.1, § 7.   The agreement provides that UNUM will advise Layne whether, in UNUM's judgment, a claimant qualifies for benefits.  *Id*., § 3,(b)(1).   The agreement states: "In the event that [Layne] authorizes denial of a claim in whole or in part, UNUM shall notify the Claimant in writing of such denial."  *Id*.

[2]*See* docket entry #54, Ex. 1.  ERISA requires every benefit plan to be established and maintained pursuant to a written instrument.  *See* 29 U.S.C. § 1102(a)(1).   Additionally, ERISA requires that employers provide covered employees with a "summary plan description", describing the benefit plan in understandable language.  In this case, Layne and UNUM stipulate that Layne's STD Plan Employee Summary Plan Description (docket entry #54, Ex. 1) is the written instrument governing Layne's STD Plan.   *See* docket entries #52, #54.  Anthony has filed no objections to Defendants' stipulation, and he offers no other plan document that he contends governs the Court's review.   Accordingly, for the purpose of review, the STD Plan Employee Summary Plan Description constitutes the sole written instrument governing Layne's STD Plan.

On January 14, 2003, Anthony submitted a claim for STD benefits for time off work for detoxification and treatment for alcohol dependency.  The attending physician's statement submitted along with Anthony's claim, completed by Judson N. Hout, M.D., lists his diagnosis as "alcohol dependency continuous."   UAMS00007.  Under the heading "referring physician or other treating physicians",  Dr. Hout's statement reads: "If Psychiatrist is needed will see Asin A. Shah . . . . Upon discharge he will be referred to Dr. Harris for medical management."  *Id.* Anthony's claim was approved and paid, and he returned to work on or before February 3, 2003.

On October 16, 2003, Anthony entered the Central Arkansas Veterans Healthcare System Domiciliary Care Unit for detoxification and participation in a 30-day inpatient program for alcohol dependency.  UACL00017.   On October 30, 2003, Anthony submitted a claim for STD income benefits.  UACL00014-16.  Along with his claim form, Anthony submitted an "attending physician's statement", completed by Katherine Clifton, a nurse practitioner.  The statement lists "alcohol dependency" as Anthony's primary diagnosis and states that he should be able to return to work after his discharge on November 21, 2003.  UACL00014.  Clifton also completed a Family Medical Leave Act certification form stating that Anthony had no work restrictions and required no medical treatment for his alcohol dependency. UACL00017.

 In a letter to Anthony dated November 7, 2003, UNUM approved Anthony for STD benefits from October 21, 2003 through November 21, 2003.   UACL00035.  The letter advises:

> If you cannot return to work on 11/22/2003 for medical reasons, you are required to have your attending physician(s) provide the following medical information to support your continued disability.  This medical information must provide us with an understanding of how your medical condition continues to affect your work capacity.
>
>                   * All current medical records (including treatment notes, procedure

notes, and test results) from all treating providers from 10/2003 to the
present.

* A list from your physician indicating the activities you cannot
and should not do along with an explanation of the medical reasoning
supporting these restrictions and limitations.

* A copy of your treatment plan and return to work plan from your
physician.

UACL00036.

Anthony did not return to work on November 22, 2003.  On December 3, 2003, UNUM

received, by facsimile transmission, a letter from Dr. John E. Harris, stating as follows:

I have been treating Mr. Anthony for over the past two years.  He suffers from
chronic airway obstruction that results from emphysema.  Due to this condition, Mr.
Anthony becomes extremely fatigued with walking short distances, lifting, climbing
stairs or any other type of exertional activity.

I have referred Mr. Anthony for additional testing at this time.  After the results of
these tests have been obtained, he will be referred to physical therapy for strength
training to improve his capacity to resume his activities of daily living.  If you have
further questions concerning this matter, please do not hesitate to call me . . . .

UACL00043.

UNUM contacted Dr. Harris and Anthony and requested additional medical records.

UACL00047-49.  On December 18, 2003, Dr. Harris  sent UNUM a medical evaluation form,

initialed and apparently completed by Dr. Harris.  UACL00052.  The form indicates that

Anthony made a return office visit to Dr. Harris on November 24, 2003, complaining of

shortness of breath.  Under the heading  "assessment" Dr. Harris made three entries, one of

which is legible and reads: "COPD."  *Id*. at UACL00043.   Dr. Harris also gave  UNUM a

radiology report of a December 17, 2002 esophagram.  UACL00051.  The report indicates that

Anthony had been experiencing trouble swallowing and states that the x-rays showed a prior lung

4

resection and a gastrectomy.  *Id*.

On December 17, 2003, UNUM sent Dr. Harris a written request for medical records requesting:

> \* ALL medical records including office notes, tests performed and results, treatment plan, referrals, current medications from 11/2003 to the present, and estimated return to work.  Also, include current restrictions and limitations preventing this patient from performing his/her occupation.

> \* Office notes from 11/2003 to the present

UACL00055.

On January 6, 2004, Dr. Harris's office sent UNUM additional medical records, via facsimile transmission, which included the following:

• A radiology report of a November 5, 2003 CAT scan of Anthony's chest, finding emphysema and esophageal irregularity.  UACL00070-72.

• A medical evaluation form initialed by Dr. Harris, indicating that Anthony made a return office visit on January 4, 2004, complaining of a skin rash.  UACL00068.   Under the heading  "assessment" Dr. Harris made four entries, one of which is legible and reads: "COPD - stable."  *Id*.

• An radiologist's interpretation of a CAT scan of Anthony's neck, noting a history of dysphagia and finding no abnormalities.

Also on January 6, 2004, UNUM sent Dr. Harris a medical release form, signed by Anthony, and a request for Anthony's pulmonary function test results, specific restrictions and limitations, results of any recent tests, and any physical therapy notes.  UACL00085.

By letter dated January 15, 2004, UNUM informed Anthony that his claim for short term

disability benefits would not be extended beyond November 21, 2003.  The letter states, in

pertinent part, as follows:

> Based on the information in our file, there is no disability supported by medical
> documentation.  We have reviewed the recent medical documentation that was
> submitted to us last week.  We reviewed the notes from your 12/19/2003 office visit
> and the 01/05/2004 office visit.  However, there was not sufficient medical
> documentation to extend your claim. The review of this documentation concluded:
> The 12/19/2003 CT scan of neck was indicated as negative.  The 1/05/2004 office
> visit note indicated that you were complaining of a rash.  There were no current
> restrictions and limitations listed.  There was no indication of impairment of physical
> functioning capabilities.  We are in need of the actual diagnosis you are out of work
> due to, treatment notes in regards to this condition, diagnostic test results and specific
> restrictions and limitations.
>
> We will be unable to review your claim for an extension of benefits beyond
> 11/21/2003 until this medical documentation is received.  If we do not receive this
> information within 14 days from the date of this letter, your file will be closed.

UACL00091.

On January 27, 2004, UNUM received an attending physician's statement from Dr.

Harris's clinic.  UACL00090.  The statement records Anthony's diagnosis and secondary

conditions as COPD, history of stomach cancer, and hypertension.  UACL00090.  The statement

provides that Anthony had been treated for COPD since August 2001, unable to work since

November 2003, and his medical treatment includes medication and office visits as needed.  The

portion of the statement form designated for restrictions and limitations contains no information.

A note in Anthony's claim file, dated February 9, 2004, created by UNUM Customer

Care Specialist Andrea Tarter[3] states: "Call from Loretta at er office [;] she wanted to know the

status of the claim.  I advised that the claim was not payable after 11/21/2004 and that the nccd

---

[3]*See* UACL00079-80 (January 15, 2004 letter to Anthony from "Andrea Tarter, Customer
Care Specialist").

letter was sent to my consultant for review.  Er stated that she though[t] alcohol had a big part of this[.]  I advised that we had paid claim for tx [treatment] of this but after that the dx [diagnosis] changed and we had no r & amp; l's to support.  I advised that ee does have the right to appeal decision if he would like.   UACL00094.  The record indicates that "Loretta", referenced Tarver's note, is Loretta Blackwell, a Layne employee.  *See* UACL000024.

On February 17, 2004, UNUM advised Anthony, by letter, it was unable to approve his claim for STD benefits beyond November 21, 2003.  UACL00097-99.  The letter advises Anthony of his right to appeal and states that UNUM is in need of "actual treatment notes" relevant to COPD, results of pulmonary function tests, and specific restrictions and limitations that impaired Anthony from performing the duties of his regular occupation.

By letter dated April 6, 2004, Anthony appealed UNUM's decision denying his claim. Anthony's letter of appeal states:  "I am resubmitting my claim which should include the diagnosis for the reason I am out of work, treatment notes regarding my condition, diagnostic test results and specific restrictions and limitations as apply to my being able to perform my job." UACL00106.

In support of Anthony's appeal, Dr. Harris submitted an amended attending physician's statement, stating, again, that Anthony had been treated for COPD since August 2001 and had been unable to work since November 2003.  The statement lists Anthony's diagnosis and secondary conditions as  COPD, history of stomach cancer, hypertension, depression, and hypothyroidism.  Dr. Harris provided the following statement regarding Anthony's restrictions, defined as "what the patient *should not do*" :

Due to his breathing problems and overall health status, Mr. Anthony should not

engage in lifting more than five pounds, climbing ladders, crawling on ground, or walking long distances without stopping to rest.

UACL00110.  Dr. Harris stated the following concerning Anthony's limitations, defined as "what the patient *cannot do*":

> Technically, Mr. Anthony is ambulatory for the above [restrictions], but with reduced capacity.

*Id*.  Along with the amended attending physician's statement, Anthony provided a list of medications including Bextra, a nonsteroidal anti-inflammatory; Zoloft, an antidepressant; Ambien, a sleep aide; Norvasc; a calcium channel blocker for hypertension; Synthroid, a thyroid hormone; and guaifenesin, an expectorant.

In support of his appeal, Anthony provided a pulmonary function test report.

UACL00115-116.  The report does not state when the test was performed, but it reads, "Edited: 02/2/04."  The report contains results for spirometry, lung volume and airway resistance, and diffusion testing, as well as an arterial blood gas study.  The report concludes with the following "computerized" interpretation:

> There is a mild obstructive lung defect.  Because expiratory time to FVC is less than 5 seconds, *the degree of obstruction may be underestimated*.  The airway obstruction is confirmed by the decrease in flow rate at peek flow and flow of 25%, 50%, and 75% of the flow volume curve.  Lung volumes are within normal limits.  There is a mild decrease in diffusing capacity.  This is interpreted as an insignificant response to bronchodilator.  Low volume loop appears mildly obstructed.  FEV1 and FEF 25-75 are decreased.  Lung volumes are normal.  Diffusing capacity is normal after adjustment of HB and COHB.  No change with bronchiodialation.

UACL00115-116(emphasis added).

Anthony submitted additional medical records showing the following:

•     In 1996, Anthony was diagnosed with stage 3 gastric cancer, and he underwent a

8

total gastrectomy.  UACL00153-155.  A follow-up note dated March 31, 2000 by

Dr. Omar T. Atiq states that Anthony has no recurrence of cancer, but he is on

"expectant observation" and has upper GI/abdominal symptoms that are most

likely benign in origin.

•      In 1997, Anthony was diagnosed with lung cancer after doctors discovered a mass

in his right lobe.  In September 1997, two-thirds of Anthony's right lung was

surgically removed.  UACL00240.  However, a  pathology report states that the

mass in the removed lung was benign.  UACL00242.

Anthony's claim file includes an undated entry documenting that Anthony telephoned

UNUM and reported that he wasn't physically able to hold his job and was "limping along."

UACL00297.  Pertinent portions of the document describe Anthony's conversation with an

unidentified UNUM representative as follows:

> Feels he never returned to work full time after his surgeries.  Did what he could do
> and limped along.  ER [Layne] accommodated him.  Would let him off a few days.
> Physically what changed in 10/03?  'Just couldn't do what I used to do."
>
> . . . .
>
> Doesn't have a stomach.  Has lost a lot of weight.  Weighs 110 pounds and has
> emphysema.  Doesn't feel like he was doing his job.  Lost 2/3rds of his lung.  Doing
> more tests on his lungs at Pine Bluff about spot on his lung and only on one of his
> kidneys.
>
> Would do emergency work, called out in the middle of the night, welding at odd
> hours, and just couldn't do it.  Work for 2-3 days, and then just get run down and
> couldn't work for 2-3 days after that.  Was paid hourly.  Averaged 40-45 hours a
> week prior to 10.03.  Unless there was an emergency.

UACL00297.

On May 11, 2004, UNUM requested that Laura Mininni ("Mininni") , a registered nurse

employed by UNUM, review Anthony's medical records.  UACL00277.   UNUM directed

Mininni to answer two specific questions:

> 1)   Does the medical documentation indicate restrictions or limitations as of 11/21/03
> and continuing, whether based on substance abuse treatment or pulmonary condition?
>
> 2)   Are the restrictions indicated by Dr. Harris on 12/3/03 based on fatigue from
> emphysema adequately supported by the medical documentation, credible and consistent
> with the examination and diagnostic findings?

Two days after UNUM requested that Mininni review Anthony's claim, Mininni issued a

report answering "no" to the foregoing  questions.  UACL00279-82,  Mininni's report states that

Anthony's records indicate that his "primary problem was ETOH dependency", and she opines

that Anthony's medical records fail to support restrictions or limitations.  She states:   "There is

very little information in the file in regards to COPD[,] and based on available medical data there

is no support of loss of functional capacity from COPD."  UACL00282.

Mininni's report states that Dr. Harris's January 27, 2004 attending physician's statement

contains no "Rs and Ls" (restrictions or limitations).  Apparently, Mininni ignored Dr. Harris's

amended statement, which includes specific restrictions and limitations and states that due to

Anthony's "breathing problems and overall health status"  he *should not* engage in lifting more

than 5 pounds, climbing ladders, crawling, or walking long distances without resting.   Mininni

also misreported that Anthony's pulmonary function test report  contained no "02 stats with

exercise or on [room air] at rest."   The first page of the report contains results of an arterial

blood gas study, which include oxygen saturation and other values that Mininni failed to

consider.

 On May 24, 2004, UNUM sent Anthony a letter denying his appeal, stating, "Our review

concluded that insufficient medical data [exists] to support loss of functional capacity from

COPD." UACL00306.  UNUM's letter incorporates Mininni's assessment of Anthony's medical

records and refers to a medical certification form completed by Nurse Clifton in connection with

Anthony's alcohol dependency treatment in October 2003.  Specifically, the letter states: "Ms.

Clifton indicated on this form that there were no other restrictions or limitations that would

impair your ability to perform the essential functions of your job, and that your impairments [are]

related to your in-patient treatment for substance abuse." UACL00306.  Regarding Anthony's

statement that he could no longer perform his job without getting "run down", the letter states:

"You reported that you were working a full time schedule up to your absence from work in

October 2003, but that you felt like you could not function.  There is no indication that you were

deficient in your job performance and there is insufficient indication at the time you stopped

working of medically documented restrictions and limitations that would preclude you from

performing the material duties of your occupation." UACL00307.

Anthony filed this lawsuit on August 12, 2004.  He asks the Court to reverse UNUM's

decision and award him past due STD and LTD benefits.

## Claim for STD Benefits

ERISA provides that an employee may bring a civil action to recover benefits due to him

under the terms of an employee welfare benefit plan.  *See* 29 U.S.C. § 1132(a)(1)(B).  The terms

of Layne's STD Plan, which are pertinent to Anthony's claim, follow:

> **Disability or Disabled**--UNUM is administering your Employers plan and will advise on
> your sickness or injury based on the following terms of your plan:
>> 1.  You are limited from performing the material and substantial duties of your
>> regular occupation due to your sickness or injury; and
>> 2.  You have 20% or more loss in weekly earnings due to the same sickness or

injury.

### When are claims paid?

Claims are paid when the plan administrator receives a satisfactory proof of claim, and your claim for disability benefits has been approved.  Benefits payable under the plan will be paid weekly during any period that you remain disabled under the terms of the plan.

### What constitutes proof of claim?

In order for a claim to be processed, the claims administrator must receive your application for benefits, as well as sufficient medical evidence in support of your claim, within 30 days of the disability.  Such evidence may consist of a record from your doctor, narrative reports, x-rays and any other medical records, as well as evidence that you continue to be under the care and supervision of a physician. In the absence of such proof, the claims administrator may elect to suspend benefits until such proof has been received.

Your disability must be supported by current medical evidence.  You must be under the continuous care of a qualified physician, with a course of treatment that is appropriate for you condition.

### What do you do to appeal?

. . . .
In the case of a claim denied on the grounds of medical judgment, we will consult with a health professional with appropriate training and experience. . . .

### How to File a Claim

. . . .
UNUM will review the application [for STD benefits] and make a determination if the necessary medical information has been provided and if the reason you are unable to work is sufficient for you to receive Short Term Disability income benefits.

Although Congress has not specified the scope of judicial review applicable to claims

brought under § 1132, in *Firestone Tire and Rubber Co. v. Bruch*, 109 S. Ct. 948 (1989), the

Supreme Court held that a denial of benefits challenged under ERISA is subject to *de novo*

review unless the terms of the benefit plan give the plan administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the plan.  *See Firestone Tire and Rubber Co. v. Bruch*, 109 S. Ct. 948, 956 (1989).  When a plan confers such discretionary authority, the administrator or fiduciary's decision is given deference and reviewed under an abuse of discretion standard, unless factors exist that mandate application of a less deferential standard.  *See Woo v. Deluxe Corp*., 144 F.3d 1157, 1060-61 (8th Cir. 1998).

Layne asserts that the STD Plan gives the plan administrator discretion to determine eligibility benefits because it states that benefits will be paid after "the plan administrator receives a satisfactory proof of claim" and after "the plan administrator has approved the claim." But such language merely confirms that an applicant must initiate the claims process by submitting a satisfactory proof of a claim and that UNUM must approve the claim before benefits are granted.  The SPD contains no language granting UNUM discretion in determining whether a proof of claim is satisfactory.[4]

In *Walke v. Group Long Term Disability Ins*., 256 F.3d 835, 839 (8th Cir. 2001), the Eighth Circuit held that a deferential standard of review is triggered only with "explicit discretion-granting language."  *Accord  Rush Prudential HMO, Inc. v. Moran*, 122 S. Ct. 2151, 2170 (2002)("When this Court dealt with the review standards on which [ERISA] was silent, we held that a general default rule of de novo review could be replaced by deferential review if the

---

[4]In *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801 (8th Cir. 2002), the Eighth Circuit found that a benefits plan contained discretionary-granting language because it specified that a beneficiary must provide written proof of continued total disability and "that such proof must be satisfactory to [the plan administrator]."  *Id*. at 806.  Layne states: "Like the plan in *Ferrari*, the STD Plan in this case requires that proof of claims disability be 'satisfactory.'" Because Layne's SPD contains no provision that proof of claims be satisfactory *to the plan administrator*, the Court disagrees that *Ferrari* mandates an abuse of discretion standard in this case.

13

ERISA plan itself provided that the plan's benefit determinations were matters of high or unfettered discretion."). The Court finds no such language in Layne's STD Plan.

Layne argues that explicit, discretion-granting language is required only in situations where an insurance policy serves as the ERISA plan document or where the plan is funded by the purchase of insurance. *See* docket entry #55, at 3 n.1. The Court disagrees. The amount of discretion possessed by a plan administrator determines the rights of plan beneficiaries and affects the administrator's burden to assemble an adequate record and explain its decision at the administrative level. *See Walke*, 256 F.3d at 840. As explained by Judge Posner in *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000), the very existence of an employee's rights under an ERISA plan depends on the degree of discretion lodged in the administrator; thus "the employer should have to make clear whether a plan confers solid rights or merely the 'right' to appeal to the discretion of the plan's administrator." *Herzberger*, 205 F.3d at 331. The reasons for requiring explicit, unequivocal discretion-granting language exists regardless of whether the benefit plan comes in the form of an insurance policy or whether the plan is funded by insurance.

The Eighth Circuit has held that ERISA plan provisions that "*read like* a typical insurance policy . . . do not trigger the deferential ERISA standard of review." *Ravenscraft v. Hy-Vee Employee Ben. Plan & Trust*, 85 F.3d 398, 402 n.2 (8th Cir. 1996)(emphasis added). Provisions "that read like a typical insurance policy", in the context of welfare benefit plans, are those that read like the very provisions at issue in this case, which provide that benefits will be paid upon satisfactory proof of disability. *See Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 839 (8th Cir. 2001)(quoting *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000)("[A] policy claim provision stating that 'the plan administrator will not pay benefits until

14

he receives satisfactory proof of entitlement . . states the obvious, echoing standard language in insurance contracts not thought to confer any discretionary powers on the insurer.). The  Court concludes that UNUM's decision to deny Anthony's claim for STD benefits is subject to *de novo* review.

Under the STD Plan, an applicant is disabled when he is limited from performing the material and substantial duties of his regular occupation due to sickness or injury and has at least a 20% loss in weekly earnings due to the same sickness or injury.   The record contains no evidence that UNUM made an effort to identify the substantial and material duties of Anthony's regular occupation and determine whether he could perform those duties without adverse medical consequences, considering his documented medical conditions including COPD, a lung resection, a gastrectomy, hypothyroidism, and hypertension.  UNUM gave no consideration to Dr. Harris's opinion that Anthony had been unable to work since November 3, 2003 and that due to Anthony's "breathing problems and *overall health status*"  he *should not* engage in lifting more than 5 pounds, climbing ladders, crawling, or walking long distances without resting.

"If a plan administrator is dissatisfied with the medical evidence submitted by an employee's treating physician(s), it may require the employee to undergo an [independent medical examination] and may discount a treating physician's opinion 'entirely in favor of a contrary opinion produced by the independent examiner.'"  *Smith v. Unum Life Ins. Co. of America* 305 F.3d 789, 795 (8th Cir. 2002)(citing *House v. Paul Revere Life Ins. Co.,* 241 F.3d 1045, 1048 (8th Cir.2001)).  In this case, however, UNUM rejected Dr. Harris's opinion based

on a cursory, in-house review of Anthony's medical records.[5]   Additionally, UNUM's May 27, 2003 letter to Anthony indicates that UNUM based its decision, at least in part, on Nurse Clifton's assessment of Anthony's ability to work.   However, Nurse Clifton treated Anthony for alcohol dependency; there is no evidence that her evaluation of  Anthony's ability to work included an assessment of how his health problems--other than alcohol dependency--affected his ability to work.

Given the absence of evidence contradicting Dr. Harris's opinion and recommendations, UNUM's benefit decision cannot stand.  *See House v. The Paul Revere Life Ins. Co.,* 241 F.3d 1045, 1048 (8th Cir.2001) (holding that administrator abused its discretion in denying benefits based solely on an absence of any objective evidence when administrator possessed no evidence refuting treating physician's opinion that claimant was totally disabled).  Further, the Court finds that an award of retroactive benefits is the proper remedy in this case.  *See Williams v. International Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000)(granting retroactive benefits where plan administrator engaged in selective review of applicant's medical records); *Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 477 (7th Cir. 1998)(granting reinstatement of benefits where no evidence supported termination or denial of benefits).

### Claim for LTD Benefits

Early in this case, before filing of the administrative record, UNUM filed a motion for a judgment on the pleadings, asserting that Anthony had failed to exhaust his administrative

---

[5]UNUM discounted Anthony's statement regarding the toll physical work had on his health because it had "no indication" of a decline in Anthony's work performance.  However, no evidence in the administrative record contradicts Anthony's statement that he would "work for 2-3 days, and then just get run down and couldn't work for 2-3 days after that."

remedies with respect to his claim for LTD benefits.   In Anthony's first amended complaint he

alleged, "By virtue of the fact that UNUM has denied Plaintiff's claim for short-term benefits,

Plaintiff is precluded from applying for long-term disability benefits."  Docket entry #9, ¶ 10.

Accepting Anthony's allegations as true, as the Court must do when considering a motion for

judgment on the pleadings, the Court found that Anthony had "successfully pleaded exhaustion

of all non-futile, administrative remedies available to him."  Docket entry #19, at 3.

Anthony submitted several documents that the Court did not consider in deciding

UNUM's motion for judgment on the pleadings.  Among those documents are two letters to

Anthony from UNUM referencing Anthony's claim for LTD benefits.  The first letter, dated

December 21, 2004, states, in part, as follows: "We are writing to let you know that we have

received your Long Term Disability claim and have completed our initial review of the

information submitted to date."  Docket entry #15, Ex. 4.  The second letter, addressed to

Anthony's counsel and dated January 7, 2005, states, in part, as follows:

> This letter is concerning your claim for Long Term Disability benefits.   After
> speaking with Attorney Leon Marks on January 4, 2005, we regret that we are unable
> to give further consideration to your request for benefits.
>
> In this conversation, we were informed that your Short Term Disability claim, as well
> as your Long Term Disability claim, is currently in the litigation process.  As a result,
> this claim, along with your Short Term Disability claim, will be resolved through the
> litigation process, which began in August of 2004.

Docket entry #15, Ex, 6.

In its brief in support of summary judgment, UNUM reasserts that Anthony failed to

exhaust his administrative remedies.  Although the Court found that Anthony successfully

"pleaded" exhaustion of all non-futile administrative remedies, that finding did not amount to a

final ruling on the merits that Anthony had, indeed, exhausted his administrative remedies with respect to his claim for LTD benefits.

In light of  UNUM's letters noting receipt of Anthony's claim for LTD benefits, UNUM's initial consideration of the claim, and UNUM's decision to cease further consideration of the claim while this lawsuit is pending, it is clear that Anthony has yet to exhaust his administrative remedies with respect to his claim for LTD benefits.  Accordingly, Anthony's claim for LTD benefits will be dismissed without prejudice, which will enable him to exhaust his administrative remedies.  Should Anthony file a second action seeking benefits under the LTD Plan, he may file a Notice of Related Case pursuant to General Order 39.

## Conclusion

For the reasons stated, Plaintiffs' motion for summary judgment (docket entry #39) is GRANTED IN PART and DENIED IN PART and Defendants' motions for summary judgment (docket entries #29, #35) are DENIED.    UNUM's decision denying Plaintiff STD benefits is reversed, and Plaintiff is awarded the full 26 weeks of STD benefits available under Layne's STD Plan.   Plaintiff's claim for LTD benefits is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

IT IS SO ORDERED THIS 1ST DAY OF NOVEMBER, 2005.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE